### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| Hyper Wear, Inc., | |
| Plaintiff, | **CIVIL ACTION NO. 1:17-cv-00230** |
| | **COMPLAINT FOR DAMAGES AND** |
| v. | **INJUNCTIVE RELIEF** |
| Fitness 75247, Inc., Fitness 77041, Inc., and Fitness Depot, Inc. | |
| | **Jury Trial Demanded** |
| Defendants. | |

### COMPLAINT

Plaintiff, Hyper Wear, Inc. ("Hyperwear[1]"), for its complaint against Fitness 75247, Inc., Fitness 77041, Inc., and Fitness Depot, Inc. (collectively, "Fitness Depot" or "Defendants"), upon information and belief, alleges as follows:

#### Introduction

1.      Since its founding in 2007, Hyperwear has been an innovator in the fitness industry in the United States and around the world.  Hyperwear designs, develops, markets, and sells high-quality, durable fitness equipment for sports performance training, personal training, group exercise and the home.  Hyperwear's mission is to provide simple, powerful gear supported by best-in-class education and training resources to help its customers get the most from Hyperwear's products.

2.      One of Hyperwear's products, the SANDBELL®, is a neoprene disc filled with sand that serves as a versatile free weight:

---

[1] "HYPERWEAR" and "HYPER WEAR" are registered trademarks owned by plaintiff Hyper Wear, Inc.

1



The SANDBELL product was developed in Austin, Texas in 2008, and is Hyperwear's most successful product to date.  Hyperwear has invested heavily in marketing and advertising the SANDBELL product, garnering significant media attention, industry recognition, and customer interest.  Hyperwear has used its SANDBELL trademark and SANDBELL trade dress continuously and pervasively since the product's introduction, for example on the SANDBELL product itself, on Hyperwear's website, and in marketing materials, to ensure that consumers associate the SANDBELL trademark and trade dress with a high-quality product available exclusively from Hyperwear.

3.      In February 2011, a Fitness Depot location in Ottowa, Canada placed (and Hyperwear fulfilled) an order for over 300 SANDBELL products.  Over the next few months, Hyperwear corresponded with a representative of Fitness Depot regarding their purchasing of additional SANDBELL products for over 20 other Fitness Depot locations, although Fitness Depot did not place additional orders from Hyperwear.  Rather, Fitness Depot started selling in Canada low-quality counterfeits of Hyperwear's product — products with "SAND BELL" printed on the product and designs mimicking that of Hyperwear's SANDBELL product.



4.      Upon learning of Fitness Depot's egregious conduct, Hyperwear notified Fitness Depot of its infringement and demanded that Fitness Depot cease and desist its unlawful activities.   In light of Hyperwear's protest, Fitness Depot appeared to have removed the infringing products from the company's offerings (at least for U.S. visitors to its Canadian website).   Hyperwear has since learned, however, that Fitness Depot is continuing to sell the same counterfeit products, including through Fitness Depot locations in Texas.

5.      Fitness Depot has blatantly and willfully infringed Hyperwear's rights by manufacturing, marketing, promoting, distributing, and/or selling products that unabashedly mirror Hyperwear's SANDBELL product in both design and marking.   Fitness Depot is unfairly and unlawfully capitalizing on Hyperwear's success and goodwill, and irreparably harming Hyperwear's business.   Fitness Depot's wrongful actions constitute trademark and trade dress infringement, counterfeiting, unfair competition, unjust enrichment, misappropriation, and trademark and trade dress dilution.   Hyperwear brings this action to prevent further consumer confusion and to protect its business, intellectual property, goodwill, and reputation.

6.      Hyperwear's claims against Fitness Depot arise under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. (as amended) and under Texas statutory and common law.   As a result of Fitness Depot's willful counterfeiting and infringement of Hyperwear's intellectual property, there is a significant likelihood that consumers will be confused, deceived or mistaken as to the source of the goods they are purchasing or as to the affiliation between Hyperwear and Fitness

Depot and/or its products, when there is none, which will cause irreparable harm and injury to Hyperwear, its business, trademarks and trade dress.  As a result, Hyperwear seeks a preliminary injunction, permanent injunction, and the recovery of actual damages, statutory damages, enhanced damages, profits, costs, attorney fees, punitive damages, and other relief as more fully set forth below.

## The Parties

7.      Hyperwear is a company organized and existing under the laws of the State of Delaware with a principal place of business located at 2120 Denton Drive, Suite 101, Austin, Texas 78758.

8.      Upon information and belief, Defendant Fitness 75247, Inc. is a Texas corporation with a principal place of business located at 8918 Governors Row, Dallas, Texas 75247.  Upon information and belief, Frank D. Chandler is the corporation's registered agent, and has an address at 701 Commerce Street, Suite 400, Dallas, Texas 75202.  Upon information and belief, Paul Johnson is the corporation's president, and Edwin Cameron is the corporation's director.

9.      Upon information and belief, Defendant Fitness 75247, Inc. is doing business as Dallas Fitness Depot.

10.     Upon information and belief, Defendant Fitness 77041, Inc. is a Texas corporation with a principal place of business located at 9881 Tanner Road, Houston, Texas 77041.  Upon information and belief, Frank D. Chandler is the corporation's registered agent, and has an address at 701 Commerce Street, Suite 400, Dallas, Texas 75202.  Upon information and belief, Charles Lee McLaren Jr. is the corporation's director.

11.     Upon information and belief, Defendant Fitness 77041, Inc. is doing business as Fitness Depot Houston.

12.     Upon information and belief, Fitness Depot, Inc. is a Canadian corporation with a principal place of business 700 Wallrich Avenue, Cornwall, Ontario, K6H 5V7, Canada.  Upon

information and belief, Fitness Depot, Inc. was co-founded by Edwin Cameron and Marc Dubois in 1993.

13.     Upon information and belief, Fitness Depot, Inc. owns, operates, directs, manages, and/or supplies infringing products to Defendants Fitness 77041, Inc. and Fitness 75247, Inc.  For example, (1) Fitness Depot, Inc. lists the Dallas and Houston store locations on the company's Canadian website, http://www.fitnessdepot.ca (STORE LOCATOR, ABOUT US), a copy of which is attached as Exhibit A; (2) Fitness Depot Inc. actively promotes and advertises its Dallas and Houston store locations, as evidenced by Exhibit B; (3) Defendants have overlapping and/or linking websites (e.g., URL addresses for the Dallas and Houston locations redirect to Fitness Depot, Inc.'s website); and/or (4) Defendants have common directors and/or management.

### Jurisdiction and Venue

14.     This is an action for counterfeiting, trademark and trade dress infringement, trademark and trade dress dilution, unfair competition and false designation of origin, misappropriation, and unjust enrichment.  This action arises under the Texas Business & Commerce Code, the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"), federal common law, and state common law, including the law of Texas.

15.     This Court has subject matter jurisdiction of the Lanham Act causes of action (e.g., Counts 1-5 set forth below) pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).  This Court has subject matter jurisdiction of the remaining causes of action pursuant to at least 28 U.S.C. §§ 1338(b) and 1367, and/or because the causes of action arise from the same operative facts as the Lanham Act causes of action.

16.     This Court has personal jurisdiction over Fitness Depot because Defendants are Texas corporations, and/or conducting or purposefully directing activities (e.g., advertising and sales) in and to the state of Texas.

17.     Venue is proper in this District pursuant to at least 28 U.S.C. § 1391.

**Hyperwear's Business and Products**

18.     Hyperwear was originally organized as Hyper Wear, LLC in 2006, and opened its principal office in Austin, Texas in 2007.  In 2011, the company became known as Hyper Wear, Inc.  Since its founding, Hyperwear has designed, developed, and brought to market a variety of fitness products that have led to rapid growth for which Hyperwear has received positive media attention and industry recognition.  For example, Hyperwear was recognized by the Austin Business Journal in 2013 as one of the fifty fastest growing companies in Central Texas.

19.     Hyperwear's products are sold throughout Texas and the United States, in addition to various international markets.  For example, Hyperwear sells its products directly to consumers, through the company's website www.hyperwear.com, and through authorized resellers, both online and in retail locations.

20.     Hyperwear's fitness products are designed to be durable, distinctive, and safe to use.  Hyperwear's product offerings include, among others, the SANDBELL®, STEELBELL®, and SOFTBELL™ exercise weights, the HYPER VEST® PRO weight vest, the SANDROPE® battle rope, the FIT RUCK®, and the WATERBELL®.

21.     As a result of Hyperwear's substantial investments in the design, development, manufacture, and marketing of the SANDBELL product, it has become one of Hyperwear's most successful products.  The SANDBELL product is a circular neoprene bag filled with sand that acts as a versatile and safe weight that may be used as a substitute for traditional free weights in any workout or exercise.  In addition, because a SANDBELL product can be safely thrown, caught, and slammed, it allows for more creative exercises that are not possible with traditional free weights.  The SANDBELL product also adds a grip strength and stabilization challenge due to the shifting fill material.  Examples of Hyperwear's SANDBELL product are shown below:



22.     Hyperwear's SANDBELL product has received significant media attention, industry praise, and recognition.  For example, the SANDBELL product has been featured in major media such as NBC's hit television show, "The Biggest Loser," ABC's television show "Extreme Weight Loss," the Dr. Oz Show, and NBC's "Today Show."  In addition, the SANDBELL product has been featured in various exercise and health publications, including Women's Health Magazine, Muscle & Fitness Magazine, Men's Health Magazine, Shape Magazine, Prevention Magazine, WIRED Magazine, Real Simple Magazine, and Weight Watchers Magazine.  Hyperwear's SANDBELL product and workouts using the product have also been featured through Nike, Inc.'s Nike Training Club (NTC) app.

23.     In addition to the SANDBELL product, Hyperwear provides educational training content to help consumers achieve fit and healthy lifestyles using the SANDBELL product.  For example, Hyperwear developed and sells various educational and training videos, including "SANDBELL Elements of Training," "SANDBELL SLAM!," and "SANDBELL Total Body Blast" home exercise videos.  Hyperwear also developed and sells educational materials for use in grade school physical education curriculum, including the "SANDBELL K-5 PE Resource Manual."  Hyperwear additionally provides SANDBELL group exercise class programs for use at fitness clubs, and educational workshops for fitness professionals, including the SANDBELL Level One Certification Workshop.

**Hyperwear's Intellectual Property**

24.     At issue in this complaint are Hyperwear's trademark and trade dress rights associated with its successful SANDBELL products and services.

25.     Since 2008, Hyperwear has continuously engaged in the development, manufacture, and sale of the SANDBELL product.  For almost ten years, Hyperwear has used the mark "SANDBELL" throughout Texas and the United States in connection with its exercise products and services, including with the advertisement and promotion of its SANDBELL product and associated educational materials and services.  In view of Hyperwear's extensive, widespread and continuous use of "SANDBELL" mark, consumers have come to associate the "SANDBELL" mark as a source identifier of Hyperwear, and Hyperwear owns both statutory and common law trademark rights in this mark.

26.     Hyperwear is the owner of several United States trademark registrations, including Trademark Registration No. 3,714,409 ("the '409 Registration") for "SANDBELL" for, e.g., dumbbells, exercise weights, and fitness equipment, and Trademark Registration No. 4,536,180 ("the '180 Registration") for "SANDBELL" used in connection with certain fitness-related software and services.  The '409 Registration was registered by Hyper Wear, LLC, and later assigned to plaintiff Hyper Wear, Inc.  Plaintiff Hyper Wear, Inc. is the sole owner of the '409 Registration and the '180 Registration.

27.     A copy of the '409 Registration is attached as Exhibit C, and a copy of the '180 Registration is attached as Exhibit D.  The certificates of registration identified in Exhibits C and D are prima facie evidence of the validity of the registrations, Hyperwear's ownership of the marks, and Hyperwear's exclusive right to use the marks in commerce in connection with the goods and services specified in the certificates of registration under 15 U.S.C. § 1057(b).  In addition, these certificates of registration provide constructive notice of Hyperwear's claim of ownership to these marks under 15 U.S.C. § 1072.  The '409 Registration for the "SANDBELL" word mark is incontestable under 15 U.S.C. § 1065, which provides conclusive evidence of the mark's validity and registration, Hyperwear's ownership of the mark, and Hyperwear's exclusive

right to use the mark in commerce.

28.     Hyperwear has also acquired common law rights in the SANDBELL mark through its exclusive, continuous, and widespread use of the mark in commerce throughout Texas and the United States.

29.     Hyperwear's statutory and common law trademark rights related to its SANDBELL mark are hereafter collectively referred to as the "SANDBELL Trademark."

30.     Hyperwear has built its business and brand around its SANDBELL Trademark, and the marks have become integral to Hyperwear's products and services.  As explained above, consumers have come to associate the SANDBELL Trademark as a source identifier for Hyperwear because of Hyperwear's extensive and continuous use of the marks in commerce. The SANDBELL Trademark has and continues to be prominently displayed, marketed, and used on products; product packaging; websites; educational and training materials; workout videos; posters; training workshops and classes; in-store point-of-purchase signage, business cards, internet advertising, product promotions, fitness events, and other advertisements.  An example of Hyperwear's use of its SANDBELL Trademark can be found in Exhibit E.

31.     Hyperwear utilizes the SANDBELL Trademark to distinguish its products and services from those of others, to represent and convey its products' quality and value to consumers, and to designate Hyperwear as the source or origin of these products.  Hyperwear has heavily invested in advertising and promoting its SANDBELL Trademark.  These investments have been directed to the general public and the fitness industry.  For example, Hyperwear has invested tens of thousands of dollars to sponsor various fitness and sporting events, including, for example, Hyperwear's continued title sponsorship of Camp Gladiator, a popular fitness chain offering outdoor training services.

32.     In addition to trademark rights, Hyperwear has acquired trade dress rights in the SANDBELL product.  The SANDBELL product embodies unique, distinctive, and non-functional designs, and Hyperwear has extensively and continuously promoted and used these designs for years throughout Texas and the United States.  The SANDBELL product designs

(including the SANDBELL Trademark) have been featured prominently on Hyperwear's website in addition to in marketing, advertising, and other promotional materials throughout Texas and the United States.   Hyperwear has invested tens of thousands of dollars to promote the SANDBELL product and develop a loyal following of consumers throughout Texas and the United States, all of which has resulted in significant sales, goodwill, and value for the company.

33.    Because of its extensive and continuous use, Hyperwear's designs in the SANDBELL product have become well-known indicators of the origin and quality of Hyperwear's exercise products and services.  These designs have acquired substantial secondary meaning in the marketplace and have become famous.  In addition, these designs are unique, distinctive, and non-functional.  Through widespread and favorable public acceptance and recognition, Hyperwear's SANDBELL product enjoys tremendous goodwill and has become an asset of significant value as a symbol of Hyperwear's high-quality and durable products and services.

34.    Illustrations 1-3 below show exemplary images of a Hyperwear SANDBELL product.

35.

| Illustration 1:  Exemplary Image of Hyperwear's 10lb SANDBELL Product |
| :---: |
|  |

| Illustration 2:  Exemplary Image of Hyperwear's 12lb SANDBELL Product |
| :---: |
|  |

| Illustration 3:  Exemplary Image of Hyperwear's 25lb SANDBELL Product |
| --- |
|  |

36.     Hyperwear's trade dress rights in the design and appearance of the SANDBELL product, include, but are not limited to:

(a) the design, shape, size, and appearance of the body of the product;

(b) the design, shape, size, and appearance of the perimeter lining of the product;

(c) the color contrast and color combinations of the body, perimeter lining, text, and/or other markings on the product; and

(d) the color contrast and color combinations of the stitching and the perimeter lining of the product.

These features, alone or in combination, and including the overall look and appearance of the SANDBELL product, are collectively hereafter referred to as the "SANDBELL Trade Dress."

**Fitness Depot's Unlawful Activities**

37.     Fitness Depot has and is continuing to infringe Hyperwear's SANDBELL

Trademark and SANDBELL Trade Dress rights.   For example, Fitness Depot has and is continuing to advertise, offer for sale, and sell counterfeit and confusingly similar imitations of Hyperwear's SANDBELL   (the "Infringing Products").   Fitness Depot's Infringing Products are offered in the same sizes, shapes, and designs as Hyperwear's SANDBELL.   Moreover, Fitness Depot's Infringing Products contain the text "SAND BELL" in large font on the face of the product, a mark that infringes Hyperwear's incontestable SANDBELL Trademark.   Fitness Depot's use in commerce of "SAND BELL"   constitutes a counterfeit mark under 15 U.S. Code § 1116(d).

38.    Illustrations 4-6 below show examples of Fitness Depot's Infringing Products.

| **Illustration 4:  Exemplary Image of Fitness Depot's 10lb Infringing Product** |
|:---:|
|  |

**Illustration 5:  Exemplary Image of Fitness Depot's 12lb Infringing Product**



**Illustration 6:  Exemplary Image of Fitness Depot's 25lb Infringing Product**



39.     Instead of creating its own marks and designs, Fitness Depot has blatantly and intentionally copied Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress to directly compete with Hyperwear and gain an unfair advantage.  Fitness Depot has and continues to manufacture, market, promote, distribute, import, and/or sell Infringing Products throughout Texas and the United States, including to some of Hyperwear's own customers.   Upon information and belief, Fitness Depot's activities have confused and/or are likely to confuse or deceive Hyperwear's customers and the consuming public by falsely and misleadingly representing that Hyperwear is the source or in some way affiliated with Fitness Depot and its Infringing Products, when Hyperwear has no connection with Fitness Depot.

40.     As discussed above and as set forth in the counts below, Fitness Depot's actions constitute trademark and trade dress infringement, counterfeiting, unfair competition, unjust enrichment, misappropriation, and trademark and trade dress dilution.

## History Between the Parties

41.     In February 2011, a Fitness Depot location in Ottowa, Canada purchased over 300 SANDBELL products from Hyperwear.  Over the next few months, Hyperwear corresponded with a representative of Fitness Depot (Chris Busch) regarding additional purchases for approximately 23 other Fitness Depot locations, although Fitness Depot did not place additional orders from Hyperwear.  Rather, Fitness Depot started selling in Canada low-quality counterfeits (the Infringing Products) of Hyperwear's product.

42.     Upon learning of Fitness Depot's unlawful activities,  Hyperwear sent a cease and desist letter on December 14, 2015 to advise Fitness Depot of Hyperwear's intellectual property and Fitness Depot's unlawful activities in Canada.  Specifically, Hyperwear's letter identified Hyperwear's registered Canadian trademark "SANDBELL" and Fitness Depot's marketing, advertising, promoting, offering for sale, and selling of products that bear a confusingly similar mark.  At that time, Hyperwear was unaware of Fitness Depot's infringing activity in the United States.  However, a copy of Hyperwear's registered Canadian trademark enclosed with its letter

15

to Fitness Depot prominently identifies, by registration number, Hyperwear's U.S. registrations related to the SANDBELL Trademark at issue in this case (e.g., the '409 Registration and the '180 Registration). A copy of the letter sent to Fitness Depot and its enclosures are attached as Exhibit F.

43.     Hyperwear never received a response to its cease and desist letter, although Fitness Depot appeared to remove the product listings from its website (at least for U.S. visitors to the Canadian website) as a result of Hyperwear's protest. However, Fitness Depot has continued to engage in its unlawful activities by actively marketing, advertising, promoting, offering for sale, selling, and/or importing its Infringing Products not only in Canada, but also in at least Texas — all without Hyperwear's permission or authorization. Specifically, Fitness Depot continues unabashedly to sell, offer for sale, and distribute in the United States the same counterfeit Infringing Products, with the same design and markings, that precipitated Hyperwear's cease and desist letter.

44.     Fitness Depot's impermissible use of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof has been intentional, willful, and malicious. Fitness Depot's intent and/or willfulness is evidenced, for example, by (a) the similarity of its designs and marks on its Infringing Products to Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress, and (b) Fitness Depot's continuing disregard for Hyperwear's rights, despite actual and constructive notice of Hyperwear's intellectual property rights (e.g., Hyperwear's cease and desist letter, Hyperwear's extensive promotion of and media attention directed to Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress, and the registration of Hyperwear's SANDBELL Trademark and inclusion of such registration notice on the SANDBELL products).

**Harm to Hyperwear**

45.     Fitness Depot's unlawful use of Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress has and will continue to cause the relevant public and the trade

throughout Texas and the United States to be confused, mistaken and/or deceived into wrongfully attributing to Hyperwear the source, sponsorship, or affiliation of Fitness Depot's knock-off products.  Hyperwear has no control over the quality, distribution, sales, or service relating to Fitness Depot's products.  Fitness Depot's Infringing Products are of significantly inferior quality to Hyperwear's SANDBELL products, and such inferior quality has and continues to impact Hyperwear's business reputation and perception in the marketplace.

46.     Fitness Depot's unauthorized use of Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Hyperwear for which Hyperwear has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Hyperwear's products and intellectual property.

## Count I:
## Trademark Infringement Under 15 U.S.C. § 1114(1)

47.     Hyperwear re-alleges each and every allegation set forth in paragraphs 7 through 46 above, inclusive, and incorporates them by reference herein.

48.     Based on the activities described above, including, for example, Fitness Depot's unauthorized use in commerce of Hyperwear's registered and incontestable SANDBELL Trademark and/or colorable imitations thereof violates 15 U.S.C. § 1114(1).  Fitness Depot's use of the "SAND BELL" mark is likely to cause confusion, or to cause mistake, or to deceive the public.  Hyperwear's SANDBELL Trademark was registered before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

## Count II:
## Counterfeiting Under 15 U.S.C. § 1114(1)

49.     Hyperwear re-alleges each and every allegation set forth in paragraphs 7 through 48 above, inclusive, and incorporates them by reference herein.

50.     Based on the activities described above, including, for example, Fitness Depot's

unauthorized use in commerce of Hyperwear's registered and incontestable SANDBELL Trademark and/or colorable imitations thereof in connection with products competitive with those of Hyperwear violates 15 U.S.C. § 1114(1). Specifically, Fitness Depot's "SAND BELL" mark and its use in commerce constitutes the use of a counterfeit mark as defined under 15 U.S.C. §§ 1114 and 116.

**Count III:**
**Trademark and Trade Dress Infringement under 15 U.S.C. § 1125(a)**

51.    Hyperwear re-alleges each and every allegation set forth in paragraphs 1 through 50, inclusive, and incorporates them by reference herein.

52.    Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled to protection under federal, state and common law. Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout the United States since 2008. Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products. Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are non-functional and acquired substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

53.    Fitness Depot's unauthorized use of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof is likely to cause confusion, mistake, and/or deception as to the affiliation, connection or association of Fitness Depot with Hyperwear and as to the origin, sponsorship or approval of the Infringing Products.

54.    Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof violates 15 U.S.C. § 1125(a).

**Count IV:**
**Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a)**

55.    Hyperwear re-alleges each and every allegation set forth in paragraphs 7 through

18

54 above, inclusive, and incorporates them by reference herein.

56.    Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled to protection under federal, state and common law.  Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout the United States since 2008.  Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products.  Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress is non-functional and acquired substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

57.    Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof violates 15 U.S.C. § 1125(a) and constitutes unfair competition, at least because Fitness Depot has obtained an unfair advantage as compared to Hyperwear, through its use of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof to falsely designate the origin, affiliation or sponsorship by Hyperwear of Fitness Depot and/or of the Infringing Products.

58.    Fitness Depot's unauthorized use of the SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof also constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a) that is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Hyperwear.

### Count V:
### Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(c)

59.    Hyperwear re-alleges each and every allegation set forth in paragraphs 7 through 58 above, inclusive, and incorporates them by reference herein.

60.     Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof violates 15 U.S.C. § 1125(c) causing dilution to Hyperwear's trademarks and trade dress.

61.     Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled to protection under federal, state and common law.  Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout the United States since 2008.  Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products.  Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are non-functional, and became famous and acquired substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

62.     Fitness Depot's unauthorized use of Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress is likely to cause, and has caused, dilution of Hyperwear's famous trademark and trade dress, at least by eroding the public's exclusive identification of Hyperwear's famous SANDBELL Trademark and SANDBELL Trade Dress with Hyperwear and Hyperwear's fitness products and services, by lessening the capacity of Hyperwear's famous trademarks and trade dress to identify and distinguish Hyperwear's fitness products, by associating Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress with products of inferior quality, and by impairing the distinctiveness of Hyperwear's trademark and trade dress.

**Count VI:**
**Trademark and Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103**

63.     Hyperwear re-alleges each and every allegation set forth in paragraphs 7 through 62 above, inclusive, and incorporates them by reference herein.

64.     Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled

to protection under Texas law.  Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout Texas since 2008.  Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products.  Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are non-functional, and acquired fame in particular geographic areas in and throughout Texas and substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

65.    Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof violates Section 16.103 of the Texas Business & Commerce Code by causing dilution to Hyperwear's trademarks and trade dress.

**Count VII:**
**Common Law Trademark and Trade Dress Infringement**

66.    Hyperwear re-alleges each and every allegation set forth in paragraphs 7 through 65 above, inclusive, and incorporates them by reference herein.

67.    Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled to protection under federal, state and common law.  Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout the United States since 2008.  Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products.  Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are non-functional and acquired substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

68.    Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof, in direct competition

21

with Hyperwear, constitute common law trademark and trade dress infringement, at least because Fitness Depot's unlawful actions are likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of the Infringing Products.

**Count VIII:**

**<u>Common Law Unfair Competition</u>**

69.     Hyperwear re-alleges each and every allegation set forth in paragraphs 1 through 68, inclusive, and incorporates them by reference herein.

70.     Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled to protection under federal, state and common law.  Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout the United States since 2008.  Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products.  Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are non-functional and acquired substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products. Hyperwear's SANDBELL Trade Dress includes unique, distinctive, and non-functional designs.

71.     Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof, in direct competition with Hyperwear, constitute common law unfair competition, at least by palming off/passing off of Fitness Depot's goods and/or by unfairly using Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress in an intentional and calculated manner.

**Count IX:**

**<u>Common Law Misappropriation</u>**

72.     Hyperwear re-alleges each and every allegation set forth in paragraphs 7 through 71 above, inclusive, and incorporates them by reference herein.

73.     Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled

22

to protection under federal, state and common law.  Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout the United States since 2008.  Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products.  Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are non-functional and acquired substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

74.     Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof, in direct competition with Hyperwear, constitute common law misappropriation.

## Count X:
## Unjust Enrichment

75.     Hyperwear re-alleges each and every allegation set forth in paragraphs 1 through 74, inclusive, and incorporates them by reference herein.

76.     Fitness Depot's unauthorized use in commerce of Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof, in direct competition with Hyperwear, constitute unjust enrichment, at least because Fitness Depot has wrongfully obtained benefits at Hyperwear's expense.

77.     Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are entitled to protection under federal, state and common law.  Hyperwear has extensively and continuously used its SANDBELL Trademark and SANDBELL Trade Dress throughout the United States since 2008.  Through that extensive and continuous use, Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress have become well-known indicators of the origin and quality of Hyperwear's fitness products.  Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress are non-functional and acquired substantial secondary meaning in the marketplace before Fitness Depot commenced its unlawful activities in connection with the Infringing Products.

78.     Hyperwear created the products covered by of Hyperwear's SANDBELL Trade Dress and marked with Hyperwear's SANDBELL Trademark through extensive time, labor, effort, skill and money.  Fitness Depot has and is wrongfully using Hyperwear's SANDBELL Trademark, SANDBELL Trade Dress, and/or colorable imitations thereof in competition with Hyperwear, and has and is gaining a wrongful benefit by undue advantage, because Fitness Depot has not been burdened with the efforts or expenses incurred by Hyperwear, yet is obtaining the resulting benefits for its own business and products.

## DEMAND FOR JURY TRIAL

79.     Hyperwear hereby demands a jury trial on all issues so triable as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## <u>Relief Sought</u>

WHEREFORE, Hyperwear respectfully prays for:

1.     Judgment that Fitness Depot has (i) infringed Hyperwear's "SANDBELL" registered trademark in violation of 15 U.S.C. § 1114(1); (ii) counterfeited Hyperwear's "SANDBELL" registered trademark in violation of 15 U.S.C. § 1114(1); (iii) infringed Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress in violation of 15 U.S.C. § 1125(a); (iv) engaged in unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); (v) diluted Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress in violation of 15 U.S.C. § 1125(c); (vi) diluted Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress in violation of Tex. Bus. & Com. Code § 16.103; (vii) violated Hyperwear's common law rights in its SANDBELL Trademark and SANDBELL Trade Dress; (viii) engaged in common law unfair competition; (ix) engaged in common law misappropriation; and (x) been unjustly enriched at Hyperwear's expense, and that these wrongful activities by Fitness Depot were willful;

2.     A preliminary and permanent injunction against Defendants to prevent Fitness Depot, and each of its officers, agents, employees, servants, attorneys, successors and assigns,

and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the Infringing Products or colorable imitations thereof, pursuant to at least Tex. Bus. & Com. Code § 16.104 and 15 U.S.C. § 1116;

3.      An Order directing Fitness Depot to file with this Court, within thirty days after entry of the injunction, a report in writing and under oath, setting forth in detail the manner and form in which they have complied with the injunction, pursuant to at least 15 U.S.C. § 1116(a);

4.      An Order directing Fitness Depot to recall all Infringing Products sold and/or distributed and provide a full refund for all recalled Infringing Products;

5.      An Order directing Fitness Depot to destruct (i) all Infringing Products, including all recalled Infringing Products, (ii) any other products that use Hyperwear's trademarks or trade dress in Fitness Depot's possession or control, and (iii) all advertising materials related to the Infringing Products in Fitness Depot's possession, custody or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

6.      An Order directing Fitness Depot to publish a public notice providing proper attribution of Hyperwear's SANDBELL Trademark and SANDBELL Trade Dress, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

7.      An Order barring importation of Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

8.      An award of Fitness Depot's profits, Hyperwear's actual damages, enhanced damages of three times Hyperwear's damages, statutory damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least the common law, Tex. Bus. & Com. Code § 16.104, 15 U.S.C. §§ 1114, 1125, 1116, and 1117;

9.      An award of $2,000,000 for Fitness Depot's use of a counterfeit mark under 15 U.S.C. § 1117(b); and

10.      Such other and further relief as this Court deems just and proper.


                              Respectfully submitted,


                              By:  */s/ Joseph Gray*
                                   Joseph Gray (Texas Bar No. 24045970)
                                   Valerie Barker (Texas Bar No. 24087141)
                                   Tecuan Flores (Texas Bar No. 24084569)
                                   **BAKER BOTTS L.L.P.**
                                   98 San Jacinto Blvd., Suite 1500
                                   Austin, Texas 78701
                                   Tel:  (512) 322-2639
                                   Fax:  (512) 322-8385
                                   joseph.gray@bakerbotts.com
                                   valerie.barker@bakertbotts.com
                                   tecuan.flores@bakerbotts.com

                                   ***ATTORNEYS FOR PLAINTIFF HYPER WEAR, INC.***